UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 15-80068-CR-ROSENBERG/BRANNON

UNITED STATES OF AMERICA,

vs.

KEVIN RAPHAEL BULLY,

　　　　Defendant.



_____/

## REPORT RECOMMENDING THAT
## DEFENDANT'S MOTION TO SUPPRESS (DE 87) BE DENIED

THIS CAUSE is before the Court on Defendant KEVIN RAPHAEL BULLY's Motion to Suppress Evidence Illegally Seized on March 26, 2015 (DE 87), to which the Government responded in opposition (DE 90). The Court held a two-part evidentiary hearing on December 15 - 16, 2015. (DE 99, 101). The parties subsequently submitted supplemental briefs. (DE 111, 113). For the reasons that follow, the Court RECOMMENDS that the Motion to Suppress (DE 87) be DENIED.

## I.　　BACKGROUND

Defendant is charged by Superseding Indictment (DE 46) with conspiracy to import and distribute a schedule I controlled substance known as Alpha-pyrrolidinopentiophenone ("α-PVP" a/k/a "flakka"); possession with intent to distribute heroin, a schedule I controlled substance; possession of a firearm by a convicted felon; and possession of a firearm in furtherance of a drug trafficking crime.

These charges stem, in part, from a warrantless search of Defendant's vehicle and residence following a controlled delivery on March 26, 2015 of a package containing flakka

(addressed to Jamie Lewis) which was accepted by Defendant. Soon after Defendant accepted the package at the residence, agents observed him leave the residence in a black Audi. They stopped the vehicle then obtained consent from Defendant to search his residence. Defendant now seeks to suppress all evidence obtained through the search of the black Audi automobile and subsequent search of the residence at 10309 Allegro Drive, Boca Raton, Florida on grounds that such search and seizure was unlawful.

Defendant and counsel for both sides were present at the evidentiary hearing. The Government called four witnesses: Special Agent Victor Garcia of Homeland Security Investigations ("HSI"); HSI Special Agent James Beagle; Special Agent James Mokwa of the Drug Enforcement Administration ("DEA"); and DEA Special Agent Regina Claxton. The Government also introduced five exhibits: (1) utilities report obtained by DEA related to the subject address (Govt. Ex. 1); (2) documents containing photos and personal information of Defendant and Defendant's brother, Calvin Bully (Govt. Ex. 2); (3) copy of an Aramex shipping label containing the subject address and name of co-defendant, Jamie Lewis (Govt. Ex. 3); (4) invoice for the subject package signed for by Defendant[1] (Govt. Ex. 4); (5) a consent form to search the subject residence signed by Defendant (Govt. Ex. 5); and (6) a waiver of *Miranda* rights signed by Defendant (Govt. Ex. 6).

Defendant called two witnesses, Special Agent Victor Garcia and Special Agent Matthew Davis. Defendant introduced one exhibit, copies of two aerial views of the subject residence and surrounding area (Def. Ex. 1A and 1B).

The Court finds the following credible facts from the testimony and exhibits introduced at the hearing. The government had become aware of a scheme to import an

---

[1] Law enforcement agents testified that, throughout the events that occurred on March 26, 2015, Defendant represented to agents he was his brother, Calvin Bully, and signed documents under that name.

illegal drug, flakka, to addresses in Florida, including the residence in question in this case. The government, intercepting this particular package addressed to Jaime Lewis, substituted another material for the flakka. A controlled delivery was made by an undercover officer. The person receiving and signing for the package, who stated he knew Jaime Lewis, was the Defendant, Mr. Kevin Bully, whose description was broadcast after the delivery.

Approximately 15-20 minutes later, Mr. Kevin Bully left the residence and started to drive away. Officers realized that he "pretty much" matched the description[2] of the person who received the delivery and they believed it is common practice to move drugs shortly after their receipt. (DE 107, 68:1-12). Law enforcement decided to stop the vehicle, believing drugs, whether fake or not, would be in the vehicle driven by an individual who they reasonably suspected was involved in the crime of drug importation. After the stop, a stack of currency and some partially smoked marijuana were discovered in plain view in the vehicle, but these items were only discovered after the stop. Mr. Kevin Bully, claiming that he was Calvin Bully, subsequently consented to a search of the house, a safe in the garage, and cell phones, leading to the discovery of drugs, drug paraphernalia, money, and a gun. Notably, before the controlled delivery took place, officers had determined there was an outstanding arrest warrant out of Broward County for Mr. Kevin Bully.

## II.     ANALYSIS

The Fourth Amendment prohibits "unreasonable searches and seizures," and evidence seized in violation of the Fourth Amendment must be suppressed. U.S. Const. amend. IV; *Terry v. Ohio*, 392 U.S. 1, 12 (1968); *U.S. v. Gilbert*, 942 F.2d 1537, 1541 (11th Cir. 1991).

---

[2] Special Agent Mokwa testified that the description he received from the agent who made the controlled delivery was that of a black male, 5 foot 4 inches or 5 foot 5 inches in height, with short hair and gold teeth. (DE 107, 66:7-11).

Searches "outside the judicial process, without prior approval by judge or magistrate, are per se unreasonable under the Fourth Amendment—subject only to a few specifically established and well-delineated exceptions." *Katz v. U.S.*, 389 U.S. 347, 357 (1967). Among the limited exceptions to the rule against warrantless searches and seizures are investigatory stops. *Illinois v. Wardlow*, 528 U.S. 119, 123 (2000) (citing *Terry*, 392 U.S. at 30).

"[A]n officer may, consistent with the Fourth Amendment, conduct a brief, investigatory stop when the officer has a reasonable, articulable suspicion that criminal activity is afoot." *Wardlow*, 528 U.S. at 123 (citing *Terry*, 392 U.S. at 30); *see also U.S. v. Franklin*, 323 F.3d 1298, 1301 (11th Cir. 2003). "[I]n evaluating the constitutionality of an investigatory stop, the court must examine 'whether the officer's action was justified at its inception, and whether it was reasonably related in scope to the circumstances which justified the interference in the first place.'" *U.S. v. Powell*, 222 F.3d 913, 917 (11th Cir. 2000) (quoting *Terry*, 392 U.S. at 27).

"[R]easonable suspicion is a less demanding standard than probable cause and requires as showing considerably less than preponderance of the evidence[.]" *Wardlow*, 528 U.S. at 123. Even so, it must be more than an "inchoate and unparticularized suspicion or hunch." *Terry*, 392 U.S. at 27. "The officer must have 'some minimal level of objective justification' taken from the totality of the circumstances." *Powell*, 222 F.3d at 917 (quoting *U.S. v. Sokolow*, 490 U.S. 1, 7–8 (1989)). Reasonable suspicion "does not require officers to catch the suspect in a crime. Instead, [a] reasonable suspicion of criminal activity may be formed by observing exclusively legal activity." *U.S. v. Acosta*, 363 F.3d 1141, 1145 (11th Cir. 2004); *see also U.S. v. Lee*, 68 F.3d 1267, 1271 (11th Cir. 1995) ("None of the suspect's

actions need be criminal on their face, yet taken together, they can provide trained police with reasonable suspicion.").

Here, Defendant challenges the validity of the stop of the vehicle upon leaving the residence after the delivery of the package, and the seizure of everything subsequent to that stop. Defendant does not question the validity of the consent, probably a wise move in light of his use of his brother Calvin's name throughout the police encounter. The presence of mind Defendant showed to avoid arrest on an outstanding warrant by deceiving officers about his identity, clearly proves that Defendant's will was not overborne in any manner by law enforcement.

Turning to the matter at hand, there is no doubt that at the time of the stop there was reasonable suspicion that the person in the car had been engaged in criminal activity. Reasonable suspicion is not a certainty. Law enforcement officers had at least "some minimal level of objective justification" for the stop. *Powell*, 222 F.3d at 917. A package that was part of a known drug importation scheme had been delivered to an address. The person at the address said he knew the addressee and signed for the package. Shortly thereafter, the signer left that address. Given the evidence of the custom of the drug business, it was reasonable to suspect the package that would have contained flakka, had it not been for law enforcement interception, would be in the car with that suspected person. Once the vehicle was stopped, contraband was found in plain view and consents were validly given, meaning law enforcement proceeded properly. Defendant tacitly acknowledges this by, correctly, focusing on the stop itself, not what happened thereafter. Finally, given the discovery of the contraband in plain view, the scope of Defendant's detention was reasonable.

## III.   RECOMMENDATION

Based on the foregoing, the Court respectfully RECOMMENDS that Defendant's Motion to Suppress Evidence Illegally Seized on March 26, 2015 (DE 87) be DENIED.

## IV.   NOTICE OF RIGHT TO OBJECT & SHORTENED TIME FOR OBJECTIONS

Given the swiftly-approaching trial period, the Court is shortening the time in which the parties have to file objections and responses. A party shall serve and file written objections, if any, to this Report and Recommendation with U.S. District Judge Robin L. Rosenberg, **within 7 days after being served with a copy**.  28 U.S.C. § 636(b)(1)(C).  Any responses to objections shall be filed **within 3 days of the objection**.  Failure to file timely objections may limit the scope of appellate review of factual findings contained herein.  *U.S. v. Warren*, 687 F.2d 347, 348 (11th Cir. 1982), *cert. denied*, 460 U.S. 1087 (1983).

DONE AND ORDERED in Chambers at West Palm Beach in the Southern District of Florida, this 22nd day of January, 2016.

DAVE LEE BRANNON
U.S. MAGISTRATE JUDGE