UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No.: 15-80068-CR-ROSENBERG

**UNITED STATES OF AMERICA,**

vs.

**KEVIN RAPHAEL BULLY,**

   Defendant.
_____/

### GOVERNMENT'S MEMORANDUM OF LAW
### REGARDING THE MARIJUANA EQUIVALENCY TABLE

**COMES NOW**, the United States of America, by and through the undersigned counsel, hereby files its Memorandum of Law Regarding the Marijuana Equivalency Table and states as follows:

The defendant, Kevin Raphael Bully, objects to ¶¶ 31-32 of the offense level computation in the presentence investigation report and claims that the ratio used to calculate the computation is incorrect.

### INTRODUCTION

Alpha PVP and ethylone are not referenced in § 2D1.1 of the United States Sentencing Guidelines Manual ("U.S.S.G."), which provides the base offense level for drug offenses. When a controlled substance is not referenced in the guidelines, the court must "determine the base offense level using the marihuana equivalency of the most closely related controlled substance referenced in this guideline." U.S.S.G. § 2D1.1 cmt. n. 6 ("Application Note 6"). In making that determination, the court must consider, "to the extent practicable," the following three factors: (1)

1

chemical structure, (2) effect on the user (whether stimulant, depressant, or hallucinogenic), and (3) relative potency of the drug. *See id.*

## SUMMARY OF EXPERT REPORTS

**Alpha PVP**

The government contends that methcathinone is the most closely related substance in the guidelines in structure, effect and potency to Alpha PVP, and should carry the same ratio of 1 gram of substance to 380 grams of marijuana. *See* U.S.S.G. § 2D1.1 cmt. n. 8(D). The government provided scientific data or literature regarding Alpha PVP's structure, effect and potency.

The defense focused its reply primarily on ethylone but did touch upon Alpha PVP. Dr. DeCaprio stated in his report that the pharmacological database with which to objectively assess the relative central nervous system pharmacological effects and potency of Alpha PVP in comparison to other stimulants is extremely limited. *See* DeCaprio Report ¶ 47. Dr. DeCaprio concluded that Alpha PVP is most consistent with methylphenidate (Ritalin) because of the "pattern of DAT, SERT and NET inhibition encountered." *See* DeCaprio Report ¶ 47. Dr. DeCaprio admitted that there are no available studies directly comparing the overall pharmacological effects and potency of Alpha PVP to Ritalin. *Id.* at ¶48. Dr. Dudley refused to compare ethylone to MDEA because the pharmacology of these substances is not characterized well enough for a direct comparison. *See* Dudley Report at p.1. Dr. Dudley's approach contradicts Dr. DeCaprio's ultimate conclusion regarding the comparison of Alpha PVP to Ritalin because in his report Dr. DeCaprio admits that there are no available studies directly comparing the overall pharmacological effects and potency of Alpha PVP to Ritalin. Dr. DeCaprio then proceeded to rely solely on indirect studies to compare the overall pharmacological effects and potency of Alpha PVP to Ritalin. Accordingly, Dr. DeCaprio's opinion is not based on scientific

data or literature and this Court should not rely on it in making its determination regarding the most closely related controlled substance to Alpha PVP referenced in the guidelines.

**Ethylone**

The government contends that MDEA is the most closely related substance referenced in the guidelines in structure and effect to ethylone and should carry the same ratio of 1 gram of substance to 500 grams of marijuana. *See* U.S.S.G. § 2D1.1 cmt. n. 8(D). The government acknowledges that no scientific data or literature exists on ethylone's potency, so there is no way to know if it is more or less potent than MDEA.

Bully initially agreed that the listed the substance "most closely related" by structure to ethylone is MDEA. *See* Dr. DeCaprio Report at ¶30. Dr. Dudley appeared to agree that the listed substance that is probably most closely related to ethylone is MDEA. *See* Dudley Report at p.1. Bully contends that a lower ratio should apply—a 1:100 ratio—because ethylone was comparable to methylone and methylone is less potent that MDMA which is less potent than MDEA. According to Bully, potency was the crucial factor in determining the conversion ratio to be applied. However, Bully has not produced any scientific data or literature to support this house of cards.

## THE EXPERT TESTIMONY

The United States presented two expert witnesses, Dr. Thomas Diberardino and Jordan Trecki, to testify at sentencing.

**Dr. Thomas Diberardino**:

Dr. Diberardino, who holds a Ph.D. in Polymer Chemistry from the City University of New York, described the structural chemical make-up of Alpha PVP and opined that, of the controlled substances specifically referenced in the guidelines, Alpha PVP is most closely related

to methcathinone. Dr. Diberardino also described the structural chemical make-up of ethylone and opined that, of the controlled substances specifically referenced in the guidelines, ethylone is most closely related to MDEA. Dr. Diberardino testified that both ethylone and MDEA are classified in the scientific literature as phenethylamines, and further classified as ethylenedioxy-phenethylamines. The sole distinction between ethylone and MDEA is a single oxygen atom called a Beta ketone that is associated with ethylone but not MDEA. Due to this oxygen atom, ethylone is sometimes referred to as a cathinone but is correctly classified as a methylenedioxy-phenethylamine.

**Dr. Jordan Trecki:**

Dr. Trecki opined that using available data from in vitro and in vivo experiments, accompanied by published and peer reviewed case reports, the most closely related substance to Alpha PVP was methcathinone. He also opined using similar data, that the most closely related substance to ethylone was MDEA. Dr. Trecki's testimony was clear and concise, using all available data, and to the extent practicable, evaluated the stimulant effects of both Alpha PVP and ethylone as well as the quantity needed to produce a substantially similar effect on the central nervous system for Alpha PVP. Dr. Trecki testified that the Smith report, a peer reviewed non-human primate study, demonstrated that Alpha PVP is multiple times more potent than methcathinone.

Dr. Trecki testified that ethylone like MDEA, based on a study he has reviewed and on his own Structural Activity Relationship Analysis, is expected to have a stimulant effect on the human body. Dr. Trecki testified that studies show that MDEA has a hallucinogenic effect on the central nervous system but that there is no information available to determine any hallucinogenic effect from ethylone. Likewise, Dr. Trecki testified that there is no reliable

4

information to determine whether a lesser or greater quantity of ethylone is needed to produce a substantially similar effect on the central nervous system as that produced by MDEA.

Bully presented two expert witnesses, Dr. Gregory Dudley and Anthony DeCaprio, to testify at sentencing.

**Dr. Gregory Dudley:**

Dr. Dudley, who received his Ph.D. in Organic Chemistry from the Massachusetts Institute of Technology, spent the majority of his testimony focusing on the ketone functional group as having great importance to his analysis. However, when asked to give an opinion referencing substances listed in the guidelines in Schedule I or II, he then contradicted his previous testimony, stating that depending on which part, the ketone or the amine, is more important you could choose either methcathinone to compare Alpha PVP or N,N-dimethylamphetamine (carrying a much lower ratio, to the defenses benefit).  When asked to select a substance that was the most comparable for ethylone, Dr. Dudley said he could not choose a substance, therefore the defense has offered no opinion regarding chemical structure as to the most closely related substance to ethylone under the sentencing guidelines.  By default Bully concedes that Dr. Diberardino's testimony is correct that ethylone is the most closely related in structure to MDEA.

Dr. Dudley opined that the ketone functional group is highly important based on its influence on physical properties, including as a site for chemical reactions and hydrogen bonding.  However, the guidelines do not require a comparison of physical properties.  If he followed his argument to its logical conclusion, he would not have ignored the ether functional group, which he identified as an acetal, and the methylenedioxy ring that is common to both MDEA and ethylone but lacking in methylone.  This is one structural difference, the

methylenedioxy ring, that distinguishes ethylone from methylone. The methylenedioxy oxygen atoms also can take part in chemical reactions and hydrogen bonding.

### Dr. Anthony DeCaprio:

Dr. DeCaprio submitted a 15 page, 50 paragraph report that focused on many areas of his testimony, including the following: his inability to define the term substantially similar (¶¶ 5-13); that it is impossible to predict pharmacological effects and relative potencies of drugs in humans with a high degree of confidence based on in vitro or animal data alone (¶14); that the use of in vitro data alone is unreliable (¶15); and that factors "B" and "C" of the marijuana equivalency determination for sentencing purposes as currently written do not represent an objective, reliable, and scientifically based approach to predicting the relative potency and pharmacological effect of an untested compound in comparison to a listed substance (¶17).

However, Dr. DeCaprio then proceeded to give an opinion on the very areas that he stated were impossible (¶14), and he relied on data that he stated is unreliable (¶15). Dr. DeCaprio stated on direct examination that he has a high degree of confidence in his opinion based solely on in vitro and animal data. On cross examination, Dr. DeCaprio, then stated that he was only "confident", although as stated previously, he based his analysis on a chart of in vitro data taking a convoluted average based solely on a variety of studies he selected, in direct opposition to his previous statements in ¶14 and ¶15 where he discredited the use of the very in vitro data he utilized.

Dr. DeCaprio agreed with the government that MDEA is the appropriate comparator for ethylone, but opined that methylphenidate (Ritalin) would be more appropriate as a comparator drug for Alpha PVP. In order to maintain his position advocating for a lower ratio, Dr. DeCaprio claimed that his opinion would not change even after being apprised of the peer

reviewed Smith report showing that Alpha PVP and pyrovalerone were both multiple times more potent than methcathinone. Dr. DeCaprio testified that the Smith study would not change his opinion even though it was a non-human primate study which he has previously testified is a much better method to predict drug effects than rat or mouse studies.

## ARGUMENT

Three experts in this case agree that Ethylone most closely relates to MDEA. MDEA carries a 500 to 1 comparison ratio to marijuana under the sentencing guidelines. The defense, however, would like this Court to create a new ratio that is not set forth in the guidelines to something less – they suggest 100 to 1 because ethylone is similar to methylone, and methylone is less potent that MDMA, which also carries a 500 to 1 comparison ratio to marijuana under the sentencing guidelines.

In *United States v. Booker*, 543 U.S. 220, 125 S. Ct. 738 (2005), the Court held that the federal Sentencing Guidelines violated *Apprendi* and *Blakely* insofar as they were mandatory and to the extent that they allowed the upper limits of the sentence to depend on facts not established by the guilty plea or proven to a jury beyond a reasonable doubt. Rather than striking down the entire guidelines system, the Court made the guidelines advisory; in doing so, the Court severed and excised § 3553(b)(1), which had required district courts to impose a sentence within the guidelines range, and § 3742(e), which had set forth the scope and standard of review. In place of § 3742(e), the Court inferred from the statutory scheme that the appropriate standard of review is "reasonableness," regardless of whether the sentence falls within or outside the advisory guideline range. The "reasonableness" standard is tantamount to a deferential abuse of discretion standard.

In performing this review, "reasonableness" must be measured against the factors outlined

7

by Congress in 18 U.S.C. § 3553(a). *Booker*, 543 U.S. at 261. The factors set forth in 3553(a) factors include:

> (1) the nature and circumstances of the offense and the history and characteristics of the defendant; (2) the need for the sentence imposed to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (3) the need for the sentence imposed to afford adequate deterrence; (4) the need to protect the public; (5) the need to provide the defendant with educational or vocational training or medical care; (6) the kinds of sentences available; (7) the Sentencing Guidelines range; (8) the pertinent policy statements of the Sentencing Commission; (9) the need to avoid unwanted sentencing disparities; and (10) the need to provide restitution to victims. 18 U.S.C. § 3553(a).

In *United States v. Brey*, 627 Fed.Appx. 775, 778 (11th Cir. 2015), the government argued that the 1:500 ratio should apply to ethylone because the first two factors under Application Note 6, chemical structure and effect on the user, favored the government, while the third factor, potency, was an "unknown" that should be considered "neutral," so "the scales tip in favor of the Government." *Id*. The government argued that ethylone's unknown potency should not benefit Brey, because the risk and danger of these substances is that young people take these pills, which are shipped over from China, without knowing what they actually contain. *Id*.

Brey responded that the government had the burden of proving its proposed finding by a preponderance of the evidence, and that "the issue of potency is a guess" that "does not rise to the level of ... a preponderance standard." *Id.* He argued that the district court should take a conservative approach and apply the 1:250 ratio. *Id*. The district court sustained the government's objection, finding that the government had "established by reasonable and reliable expert opinion that the ratio should be 1 to 500." *Id*.

Brey appealed the district court's opinion and argued that the district court failed to make factual findings required by Rule 32(i)(3)(B), Fed.R.Crim.P., in support of its chosen conversion ratio of 1 gram of ethylone to 500 grams of marijuana. The Eleventh Circuit held that the

district court made appropriate factual findings as required by Rule 32(i)(3)(B), Fed.R.Crim.P. Brey then argued that the district court clearly erred in determining that MDEA was the most closely related substance to ethylone under Application Note 6 to § 2D1.1 because the government did not put forth any evidence establishing ethylone's potency.  The Eleventh Circuit found that the government produced reliable and specific evidence of the first two factors, chemical structure and effect on the user, which Brey did not challenge. The Court explained that Brey's challenge rested on the government's failure to put forth any evidence of potency, without which, Brey contended, the government did not meet its burden of proving the application of the 1:500 ratio with reliable and specific evidence.

But the Eleventh Circuit found that Brey's argument that the lack of evidence of potency was fatal to the government's position—and the district court's ultimate conclusion—was not supported by the commentary to § 2D1.1. Application Note 6 which does not impose an absolute duty on the government to produce evidence about all three factors; rather, it requires only that the district court consider the three factors "to the extent practicable." U.S.S.G. § 2D1.1 cmt. n. 6 (emphasis added).   *Brey*, 627 Fed.Appx at 780.

However, other district courts have sentenced defendants in ethylone and methylone cases, applying lesser ratios than the ones called for by the guidelines. For example, district court recently found a 200 to 1 marijuana ratio applicable in a case involving methylone, *United States v. McGuire*, case no. 8:13-cr-T-35TGW, relying largely on the factors set forth in 18 U.S.C. § 3553(a).  The court specifically found that factors A, B and C to 2D1.1 note 6, are only applicable when determining "the most closely related substance" and that "once that determination is made, those factors play no further role."

The *McGuire* court relied upon *Kimbrough v. United States*, 552 U.S. 85 (2007) and its

progeny. In *Kimbrough v. United States*, 552 U.S. 85, 128 S. Ct. 558 (2007), the Court held that district courts may consider a lack of empirical basis as a reason to exercise their discretion to disagree with a guidelines provision, and therefore, district courts are entitled to reject the guidelines' crack/powder cocaine sentencing ratio based on a policy disagreement.

However, rather than vary from the range called for by the guidelines, the court effectively created a new guideline based on a lower ratio (200 to 1) rather than the 500 to 1 called for by the guidelines. The guidelines do not allow the court to modify the equivalency conversion based on drug potency. See *United States v. Ono*, 918 F.2d 1462, 1466-67 (9th Cir. 1990). The government believes that the correct approach is to calculate the marijuana equivalency ratio following the procedures set forth in the guidelines. Then, the Court may consider under the 3553(a) factors, whether that sentence is reasonable.

While the Second and Seventh Circuits have ruled that drug potency is a factor that may be considered in varying downward from the advisory sentencing guidelines, (*See United States v. Chowdhury*, 639 F.3d 583, 586 n.2 (2d Cir. 2011) and *United States v. Alvarado-Tizoc*, 656 F.3d 740, 744-45 (7th Cir. 2011)), Dr. Trecki testified there was no scientific data available that one can use to draw conclusions regarding the potency of ethylone in a human user. Dr. Trecki testified that data from in vitro studies does not provide information as to whether a greater or lesser amount of ethylone would be needed to produce a substantially similar stimulant effect in the central nervous system as does MDEA.

Dr. DeCaprio's opinion is a scientific house of cards. It is an extrapolation of an extrapolation of an extrapolation based on data that he testified is impossible to use to predict the pharmacological effects and relative potencies of drugs in humans with a high degree of confidence (¶14). He relied on a convoluted average based solely on a variety of in vitro

10

studies that he selected to attempt to provide information as to whether a greater or lesser amount of ethylone would be needed to produce a substantially similar stimulant effect in the central nervous system as does MDEA.  His logic, however, involves multiple comparisons to substances that aren't involved in this case, or in the U.S.S.G. drug equivalency table.  Dr. DeCaprio's testimony was inconsistent, unreliable and unsupported by science.  The Court should give little weight to his conclusions regarding pharmacological effects and potency of ethylone or Alpha PVP.

## Conclusion

Wherefore, the government respectfully requests that the Court find that the substance most comparable to Alpha PVP is methcathinone and apply the ratio of 1:380 and that the substance most comparable to Ethylone is MDEA and apply the ratio of 1:500.

Respectfully submitted,

WIFREDO A. FERRER
UNITED STATES ATTORNEY

 s/LOTHROP MORRIS
By: LOTHROP MORRIS
ASSISTANT U.S. ATTORNEY
Florida Bar # 0095044
500 Australian Avenue, Suite 400
West Palm Beach, FL 33401
(561) 820-8711
(561) 820-8777 (FAX)
LOTHROP.MORRIS@USDOJ.GOV

**Certificate of Service**

      I HEREBY CERTIFY that on May 24, 2016, I electronically filed the foregoing with the Clerk of the Court using CM/ECF.

                              S/ LOTHROP MORRIS
                              LOTHROP MORRIS
                              ASSISTANT UNITED STATES ATTORNEY